UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL SALAMI,

    Plaintiff,

v.

J. NIEMIEC, et al.,

    Defendants.

_____/

Case No. 1:20-cv-1100

Hon. Hala Y. Jarbou

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual allegations

At the time she filed her complaint, Plaintiff was incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which she complains occurred at that

facility. Plaintiff has now been transferred to the Macomb Correctional Facility (MRF), in Lenox Township, Macomb County, Michigan. Plaintiff sues the following DRF officials: PREA (Prison Rape Elimination Act) Coordinator J. Niemiec; Resident Unit Manager John H. Beecher; Assistant Deputy Warden Khris Nevins.

According to the complaint, Plaintiff "is . . . feminine small-build, white, gay, transgender [and] medically detailed as Gender-dysphori[c] . . . ." (Compl., ECF No. 1, PageID.2.) In other actions, Plaintiff has described herself as suffering from gender dysphoria, identifying as female, but engaging in gender nonconforming behavior that is sometimes male and sometimes female. (1:20-cv-1246, ECF No. 1, PageID.3.)

Plaintiff alleges that, on June 25, 2020, while housed on Unit 1200, she spoke with Correctional Officer Misak (not a Defendant) about sexual harassment and threats by prisoner Davis, another inmate on Unit 1200. Misak immediately contacted his supervisor, and Plaintiff promptly met with Prisoner Counselor Scott David Fleischer (not a Defendant) about her concerns. Plaintiff gave a sergeant the two dozen notes prisoner Davis had slipped under her door, which included threats to beat, rape, and kill Plaintiff. An unknown captain ordered prisoner Davis removed, and Davis was sent to Unit 500.

Plaintiff apparently filed a grievance on July 10, 2020, which was dated July 4, 2020. The grievance was rejected at Step I for not complying with grievance procedures, because it challenged the content of an MDOC policy: MDOC Policy Directive 03.03.110 ¶ E, which governs the issuance of a SPON (Special Problem Offender Notice). (Step-I Grievance Rejection, ECF No. 1-1, PageID.10.) The rejection was upheld at Step II on the same ground. (Step-II Grievance Rejection, ECF No. 1-1, PageID.12.)

Plaintiff complains that, even after Davis was moved, he continued to send the same kind of notes to Plaintiff. Plaintiff handed the notes to Defendant PREA Coordinator Niemiec. On an unknown date in August 2020, Plaintiff was interviewed by Sergeant Maisa (not a Defendant) about the incidents. Maisa met with prisoner Davis and wrote a statement. Maisa reviewed countless hours of video-footage of Unit 1200, which proved that Davis had sent the two dozen notes. Davis apparently was found guilty of sexual misconduct in an administrative hearing, and he received sanctions in June or July 2020.

On approximately September 1, 2020, Plaintiff spoke to Prisoner Counselor Fleischer, as required before filing a grievance. Plaintiff reported that she was again receiving unwanted notes from prisoner Davis, which were "raunchy." (Compl., ECF No. 1, PageID.1.) Fleischer gave Plaintiff a PREA grievance form and told her that Prisoner Counselor Purchase (not a Defendant) had requested a move for Davis. Plaintiff sent a kite to Purchase that same day, allegedly in an attempt to resolve the matter, but she received no response. Plaintiff alleges that, between August 24, 2020, and September 5, 2020, she received multiple sexually harassing, raunchy notes sent by prisoner Davis, though the notes were delivered by third parties to avoid detection on the unit cameras.

On September 5, 2020, Plaintiff called the PREA hotline to complain about Davis' "predatorial" conduct. (*Id.*, PageID.2.) Plaintiff also mailed the PREA grievance and the notes to the DRF grievance coordinator. Plaintiff, however, was not interviewed, nor was her grievance satisfactorily resolved. Plaintiff met with a social worker for PREA counseling, but the grievance ultimately was found to be supported by insufficient evidence.

According to the Step-I grievance response completed by Defendant Beecher, Defendant Niemiec looked into the allegations against Davis. When they found no prior record

on Davis, Niemiec and Fleischer took no further action against Davis, noting that Davis was held on the A wing of Unit 1200, and Plaintiff was held on the B wing.  (Step-I Grievance Response, ECF No. 1-1, PageID.7.)  Defendant Beecher therefore denied the grievance on September 24, 2020, and Defendant Nevins signed off on the grievance response.  (*Id.*)  In the Step-II grievance response, Warden Rewerts noted that Plaintiff was in one protection wing of the unit and Davis was in protection on a different wing that had no contact with the rest of the prisoners in the unit.  Rewerts denied Plaintiff's grievance, finding no violation of policy, but noted that the matter was being further investigated by the Assistant Deputy Warden.  (Step-II Grievance Response, ECF No. 1-1, PageID.9.)  The final PREA investigative report found insufficient evidence to support a violation.  (PREA Grievance Investigation Report, ECF No. 1-1, PageID.20.)

Plaintiff complains that Defendants Niemiec, Beecher, and Nevins, by not labeling prisoner Davis as a predator and by not issuing a SPON on prisoner Davis, are subjecting Plaintiff to a risk of further harassment by Davis.  Plaintiff seeks declaratory and injunctive relief, together with nominal and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Eighth Amendment

Plaintiff appears to allege that Defendants, by inadequately investigating and responding to her grievances about prisoner Davis, failed to protect Plaintiff from Davis, in violation of the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the

"unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Among the protections of the Eighth Amendment, inmates have a constitutionally protected right to personal safety. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). Nevertheless, "[a]lthough 'prison officials have a duty [under the Eighth Amendment] to protect prisoners from violence at the hands of other prisoners,' it is equally clear that not 'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials.'" *Reedy v. West*, ___ F.3d ___, 2021 WL 710909, at *3 (6th Cir. Feb. 24, 2021) (quoting *Farmer*, 511 U.S. at 833–34 (citations and internal quotation marks omitted)). In order to state a failure-to-protect claim, a plaintiff must demonstrate (1) that he "objectively" was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, and (2) that the official acted with "deliberate indifference" to inmate safety, "meaning the official was 'subjectively aware of the risk' and 'fail[ed] to take

6

reasonable measures to abate it.'" *Reedy*, 2021 WL 710909, at *3 (quoting *Farmer*, 511 U.S. at 829, 834, 847; *see also Greene v. Bowles,* 361 F.3d 290, 293–94 (6th Cir. 2004) (addressing whether knowing placement of a small, transgender female in a unit with a known predatory inmate amounted to deliberate indifference). In establishing the objective prong, although a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal-safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

Under the circumstances alleged in the complaint, Plaintiff fails to show an objectively justifiable or reasonable fear for her personal safety. Plaintiff's only allegation involving Defendants has to do with their allegedly insufficient investigation into the unspecified number of raunchy notes sent by prisoner Davis, by way of other prisoners, between August 24, 2020, and September 5, 2020. Plaintiff acknowledges that, in response to her earlier complaints, other officials had moved Davis first to Unit 500 and then to a separate wing of Unit 1200, which had no access to Plaintiff's wing. Plaintiff also indicates that Defendants charged Davis and found him guilty of sexual misconduct for having sent the earlier notes.

As a result, the only question on the objective prong is whether the second group of notes sent over a two-week period objectively created a substantial risk of serious harm to Plaintiff. However, Plaintiff does not even attempt to allege that she fears an attack from Davis at this time. She instead suggests that changes to prison placements that may occur in the future could place her at risk from Davis.

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . . This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citing *Farmer*, 511 U.S. at 848–49 (discussing inmate abuse); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See, e.g., Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* 76 F. App'x 24, 27 (6th Cir. 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim). No basis exists for concluding that harassing language by another prisoner is objectively more serious.

Moreover, the Sixth Circuit has held that "isolated, brief, and not severe" instances of sexual harassment, without more, do not give rise to Eighth Amendment violations. *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (finding that harassing comments, even coupled with one minor instance of sexualized touching during a search, fall short of an Eighth Amendment violation), *abrogated in other part by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Violett*, 76 F. App'x at 27 (an offer of sexual favors is not sufficient to state Eighth Amendment claim); *Johnson v. Ward,* No. 99-1596, 2000 WL 659354, at \*1 (6th Cir. May 11, 2000) ("Johnson's allegation that Ward made an offensive sexual remark to him does not rise to the level of a constitutional violation [as such is merely verbal abuse]."). Other courts have agreed. *See, e.g.,*

*Davis v. Goord,* 320 F.3d 346, 353 (2d Cir. 2003); *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1996); *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir. 1986).

In contrast, the Sixth Circuit has held that ongoing, coercive verbal harassment may rise to sexual abuse that violates the Eighth Amendment. *Rafferty*, 915 F.3d at 1095. The *Rafferty* court found an Eighth Amendment violation when a prison official sexually harassed a prisoner by repeatedly demanding that the prisoner expose herself and masturbate while the official watched. The court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

*Rafferty*, however, is wholly distinguishable from Plaintiff's claim. No inherently coercive power relationship exists between prisoner Davis and Plaintiff. Moreover, Plaintiff does not allege that prisoner Davis ever coerced Plaintiff into engaging in sexually abusive conduct. Instead, Plaintiff claims only that prisoner Davis subjected her to unwanted language by way of notes transmitted through third parties. Where, as here, the prisoner is safely housed away from the harasser, the occasional receipt of unwanted communications—communications that Plaintiff may elect not to read—falls short of objectively serious punishment that is barred by the Eighth Amendment.

Moreover, the fact that Plaintiff may wish to have a SPON placed on Davis—in order to remove the possibility of a future placement under which Davis could present a threat—is not relevant to her current risk of harm and does not demonstrate Defendants' subjective indifference to the existing risk of harm. Defendants cannot be found to be deliberately indifferent to a presently nonexistant risk to Plaintiff on the ground that they do not take action to prevent a hypothetical risk in the future.

Because Plaintiff fails to allege facts supporting the objective prong of the deliberate-indifference test, her Eighth Amendment claim will be dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If she is barred, she will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  March 18, 2021                    /s/ Hala Y. Jarbou
                                          HALA Y. JARBOU
                                          UNITED STATES DISTRICT JUDGE